UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RALPH W. MELLO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:12-cv-00404 |
| v. ) | Judge Aleta A. Trauger |
| ) | |
| HARE, WYNN, NEWELL & NEWTON, and ) | |
| LARRY CRAIN ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Pending before the court are two related motions. The defendants, the law firm of Hare, Wynn, Newell & Newton ("Hare Wynn") and attorney Larry Crain ("Crain") (collectively, "defendants"), have filed a Joint Motion to Dismiss or, in the Alternative, Motion for Transfer (Docket No. 5) ("Motion to Dismiss or Transfer"), to which the plaintiff filed a Response in Opposition (Docket No. 11). The plaintiff, attorney Ralph Mello, has filed a Motion to Remand (Docket No. 7), to which the defendants filed a Response in opposition (Docket No. 12), and Mello filed a Reply (Docket No. 13). For the reasons stated herein, this court will deny the Motion to Remand and will transfer this case to the United States District Court for the Northern District of Alabama.

## BACKGROUND[1]

---

[1] As described herein, the pending motions relate, in part, to four prior proceedings in which Mello, Hare Wynn, and Crain were parties, including (1) a *qui tam* action filed by Mello's client Scott Pogue against several defendants ("*qui tam* action"), from which Pogue received the relator's share of a partial settlement in 2003 and a final settlement in 2009; (2) a lawsuit filed by Mello in Tennessee state court, in which Hare Wynn and Crain intervened (*"Mello I"*); (3) a bankruptcy proceeding ("Bankruptcy Proceeding") filed by Pogue in the Bankruptcy Court for

1

In 1994, Steve Pogue retained Mello and Crain to represent him as the relator in a *qui tam* action under the False Claims Act against several companies. After Pogue filed the *qui tam* action, Pogue's attorneys retained additional counsel to represent him in prosecuting the case, including, in 2002, Hare Wynn and the law firm of Helmer, Martins, & Morgan, Co, L.P.A. ("Helmer").[2] On June 25, 2002, Pogue and his various counsel entered into a contingency fee agreement ("June 2002 Fee Agreement"), under which, in relevant part, Mello ceased serving as counsel for Pogue but retained the right to receive 7.5% of any recovery by Pogue.

In June 2003, Pogue negotiated a partial settlement of the *qui tam* action for $1.5 million.

---

the Northern District of Alabama; and (4) a Tennessee state court lawsuit filed by Mello against Hare Wynn ("*Mello II*"), which was removed to this court and then transferred to the Northern District of Alabama, where it was docketed as an adversary proceeding related to the Bankruptcy Proceeding. The parties here have filed certain orders issued in those proceedings, of which this court takes judicial notice. Where appropriate, the court has also reviewed additional relevant docket entries in *Mello II*, the *Mello II* adversary proceeding, and the Bankruptcy Proceeding.

Also, in support of their Response to the Motion to Remand, the defendants have filed three affidavits: (1) the Affidavit of Scott Powell (Docket No. 12, Ex. A), which provides background details concerning the Bankruptcy Proceeding, describes the manner in which Hare Wynn received and transferred the relator's share of Pogue's final settlement of the *qui tam* action to the Bankruptcy Proceeding's liquidation trust account, and avers that Crain had no involvement in or awareness of that process; (2) the Affidavit of Larry Crain (*id.*, Ex. C), in which Crain avers that he did not have access to and was not even aware of the transfer of final settlement funds to Hare Wynn in the Bankruptcy Proceeding at the time; and (3) the Affidavit of Deanna L. Weidner (*id.*, Ex. E), a licensed attorney, who avers that Mello told her that he had named Crain as a defendant in the instant action solely to prevent removal and that he was not actually seeking monetary relief from Crain. Where a party raises a factual attack on the subject-matter jurisdiction alleged in a complaint, the district court has wide discretion to allow affidavits and documents to resolve jurisdictional facts, provided that they do not implicate the merits of the plaintiff's claim. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (stating that "federal courts may look beyond the pleadings to assess challenged facts . . . when the defendant alleges the plaintiff fraudulently joined non-diverse defendants to destroy diversity jurisdiction.")

[2]It appears that Helmer's name later changed to Helmer, Martins, Rice and Popham, LLP. For purposes of this Memorandum, the court will refer to both entities as "Helmer."

2

Pogue's current and former counsel, including Mello, disputed how to allocate their respective contingency fee shares pursuant to the June 2002 Fee Agreement. Mello, who is a Tennessee resident, accordingly filed a lawsuit in the Chancery Court for Williamson County, Tennessee, Case No. 29729) (*Mello I*), against Pogue and Helmer, in which Crain and Hare Wynn intervened. The parties submitted the dispute to binding arbitration. In relevant part, the arbitrators determined that Mello was entitled to a 7.5% share of the attorney's fee portion of the partial settlement, as well as a 7.5% share of similar proceeds going forward. The *Mello I* court incorporated the arbitrator's decision into a binding final order, dated June 14, 2005. (Docket No. 1, Ex. 2 at pp. 20-29.)

In February 2007, before reaching a final settlement of the *qui tam* lawsuit, Pogue filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Alabama (hereinafter "the Bankruptcy Court") and a liquidation trustee was appointed. (*See In Re Scott Pogue*, No. 07-00838-TBB11 (Bankr. N.D. Ala. filed February 22, 2007).) On March 9, 2011, the Bankruptcy Court appointed Hare Wynn, Crain, Helmer, and Mello as "special counsel" on behalf of the trustee, with the understanding that they would seek to recover money on behalf of the estate in the *qui tam* action.[3] Shortly thereafter, on March 31, 2009, Hare Wynn negotiated a final settlement of the *qui tam* action, resulting in a relator's share of $8,120,000.00 to Pogue.

The settling defendants in the *qui tam* action paid the proceeds to the United States Department of Justice, which sent the funds to a Hare Wynn trust account held by a third-party bank. Pursuant to a previous agreement with the liquidation trustee in the Bankruptcy

---

[3] At the time, the parties did not inform the Bankruptcy Court that Mello had ceased representing Pogue several years earlier.

3

Proceeding, once the settlement proceeds arrived in this trust account, the bank immediately transferred those funds to the liquidation trust account of Pogue's bankruptcy estate. At this time, none of Pogue's attorneys received a disbursement for their allocable portion of the relator's share, to which, absent the bankruptcy proceedings, they otherwise would have been entitled.

Mello was dissatisfied with this result and apparently sought to recover the funds in two ways. First, he urged the Bankruptcy Court to order the trustee to disburse to him $609,000, reflecting 7.5% of the attorney's fee portion of Pogue's relator's share of the final settlement. Second, Mello filed a lawsuit against Hare Wynn in the Chancery Court for Williamson County, Tennessee (*Mello II*). In *Mello II*, Mello alleged that he held an attorney's lien on Pogue's recovery in the *qui tam* action and that Hare Wynn improperly had transferred the final settlement proceeds directly to the liquidation trustee without first satisfying Mello's lien. Mello sought compensatory and punitive damages, including interest.

The defendants removed *Mello II* to this court based on diversity jurisdiction. (*See Mello II*, Case No. 3:10-cv-243 (Judge Wiseman, M.D. Tenn. removed March 11, 2010), Docket No. 1.) Following removal, the defendants moved this court to dismiss the action or to transfer it to the Northern District of Alabama. In response, Mello argued, *inter alia*, that his lawsuit against Hare Wynn, which asserted claims only under Tennessee law, was not subject to the Bankruptcy Proceeding. This court held that Pogue's claims concerned both the validity of his alleged lien and whether the fee owed to him was properly part of the bankruptcy estate. Accordingly, Judge Wiseman found that these matters "are clearly either core proceedings or else very closely related to Pogue's chapter 11 proceedings." (*Mello II* Docket No. 30, Order at p. 3.) Applying

4

relevant venue factors, the court found that transfer of the matter to the Northern District of Alabama was warranted. *Mello v. Hare, Wynn, Newell & Newton, LLP*, Civil Action No. 3:10-cv-243, 2010 WL 2253535 (M.D. Tenn. May 30, 2010).

After *Mello II* was transferred to the Northern District of Alabama, it was docketed as an adversary proceeding in connection with the Bankruptcy Proceeding. (*See* Adv. Proc. 10-00107-TBB (Bankr. N.D. Ala. docketed August 31, 2010) ("*Mello II* Adverse Proceeding").) On motion, the Bankruptcy Court dismissed the *Mello II* adversary proceeding for lack of subject matter jurisdiction pursuant to the *Barton* doctrine. (*Mello II* Adverse Proceeding Docket No. 20.) The reasoning behind the court's decision is not contained in the order filed by the parties here (nor has the court located a docket entry in the Bankruptcy Proceeding reflecting that reasoning). At any rate, the Bankruptcy Court dismissed Mello's claims with prejudice and, according to Mello's briefing here, warned him in open court *not* to refile the claims against Hare Wynn "or the consequences could be significant." (*See* Docket No. 11 at p. 7.)

Meanwhile, after ascertaining that Mello's representation of Pogue was, in fact, entirely pre-petition, the Bankruptcy Court vacated Mello's appointment as special counsel and permitted him to file an application to recover as a Chapter 11 creditor, which Mello accordingly did. Although the Bankruptcy Court had initially expressed skepticism about Mello's right to recover, it appears that, at least as of a May 24, 2011 status conference (*see* Bankruptcy Proceeding Docket No. 453), the Bankruptcy Court determined that Mello would be entitled to recover his fees. It deferred disbursement, however, pending the resolution of certain related disputes.

On March 23, 2012, despite the warning from the Bankruptcy Court, Mello filed another

5

action in the Chancery Court for Williamson County, Tennessee (*Mello III*) – the instant lawsuit. *Mello III* contains essentially the same allegations as *Mello II*, except that Mello has added Crain as a defendant, alleging, for the first time, that Crain also breached an obligation to pay Mello his 7.5% contingency fee share from the final settlement of the *qui tam* action.[4]  Crain, like Mello, is a Tennessee resident.  On April 24, 2012, the defendants removed *Mello III* to this court on both federal question and diversity grounds, contending that Mello had fraudulently joined Crain as a defendant.

On May 1, 2012, just five weeks after Mello had filed *Mello III* and just one week after *Mello III* was removed to this court, the Bankruptcy Court ordered the Trustee to disburse to Mello $609,000, reflecting the full 7.5% contingency fee share that he had demanded, not including interest.  (*See* Bankruptcy Proceeding Docket No. 528 ("[T]he Trustee is authorized and directed to immediately pay the Mello Claim in the amount of $609,000.00 . . . .").

## ANALYSIS

**I.    Motion to Remand**

Mello argues that the court should remand this action to the Williamson County Chancery Court for lack of subject matter jurisdiction.  Federal district courts have original jurisdiction over all cases under Title 11 of the United States Code (*i.e.*, the bankruptcy code) and all civil proceedings arising under Title 11, or arising in or related to cases under Title 11.

---

[4]In *Mello III*, Mello essentially has just added Crain's name to certain *Mello II* allegations against Hare Wynn.  (*Compare, e.g.*, *Mello II* First Am. Compl. ¶ 27 ("Hare Wynn intentionally made no provisions in the settlement agreement for the recognition or satisfaction of Plaintiff's statutory attorney's lien . . . .") *with Mello III* Compl. ¶ 30 ("Neither Crain nor Hare Wynn made any provisions in the settlement agreement, or otherwise, for the recognition or satisfaction of Plaintiff's statutory attorney's lien . . . .")

6

*See* 28 U.S.C. § 1334(a)-(b).; *In re Heinsohn*, 231 B.R. 48, 55-56 (Bankr. E.D. Tenn. 1999) *aff'd* 247 B.R. 237 (E.D. Tenn. 2009). A bankruptcy court has jurisdiction over "core proceedings" affecting the bankruptcy estate, including matters concerning the "allowance or disallowance of claims against the estate or exemptions from property of the estate," 28 U.S.C. § 157(b)(2)(B), and "determinations as to the validity, extent, or priority of liens," *id.* § 157(b)(2)(K). It is the bankruptcy judge's prerogative to determine whether a proceeding is a core proceeding or otherwise related to a case under Title 11. *Id.* § 157(b)(3).

Here, as in *Mello II* with respect to Hare Wynn, Mello alleges that Hare Wynn and Crain breached a duty to him by failing to submit a 7.5% share of the *qui tam* action settlement proceeds to him directly, rather than to the bankruptcy estate, asserting that he holds a valid statutory lien or an equitable lien that took priority over the interests of Pogue's bankruptcy estate. (*See generally*, Compl.) In fact, in the Bankruptcy Proceeding, it appears that the Bankruptcy Court *has already adjudicated* some or all of these claims: the court found that Mello has a valid lien, assigned him a creditor priority status, and recently ordered disbursement of the 7.5% contingency fee share to Mello. Notwithstanding the fact that the Bankruptcy Court already rejected his position, Mello in the instant Complaint has re-alleged that the funds subject to his attorney's lien were not part of the bankruptcy estate and should have been satisfied before Hare Wynn transferred the funds to the liquidation trustee. Mello's attempt to re-litigate these issues in this court plainly implicates "core proceedings" under §§ 157(b)(2)(B) and (K) – as the Bankruptcy Court already appears to have found – because they involve determinations as to the validity, extent, and/or priority of his liens, as well the allowance or disallowance of claims against the estate or exemptions from property of the estate. Therefore, the court has subject

7

matter jurisdiction over this case pursuant to 28 U.S.C. § 1334.[5]

Mello further argues that, even if the court has original jurisdiction over this matter, it must abstain from exercising that jurisdiction, pursuant to the mandatory abstention doctrine set forth in 28 U.S.C. § 1334(c)(2). However, mandatory abstention under § 1334(c)(2) does not apply to core proceedings. *See In re Dow Corning Corp.*, 113 F.3d 565, 570 (6th Cir. 1997), *cert. denied*, *Official Committee of Torts Claimants v. Dow Corning Corp.*, 522 U.S. 977, 118 S. Ct. 435, 139 L. Ed. 2d 334 (1997). Because Mello's Complaint involves core proceedings, it is not subject to § 1334(c)(2).[6]

## II. Motion to Transfer

Having determined that it has subject matter jurisdiction, the court must consider whether it should adjudicate the merits of this case or transfer it to the United States District Court for the Northern District of Alabama. Under 28 U.S.C. § 1412, "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." The "interest of justice" and "convenience of the parties" standards in § 1412 are disjunctive and separate, and transfer is appropriate even if only one is met. *MD Acquisition, LLC v. Myers*, No. 2:08-cv-494, 2009 WL 466383, at *6 (S.D. Ohio Feb. 23, 2009)

---

[5]Although the court need not reach the issue, the defendants also present a persuasive argument that Mello has fraudulently joined Crain in an effort to defeat diversity.

[6]Furthermore, Mello's claims relate to conduct by Hare Wynn and Crain in their capacity as special counsel on behalf of the liquidation trustee in the Bankruptcy Proceeding. Thus, the suit functionally amounts to a suit against the trustee, which is necessarily a core proceeding. *See In re Heinsohn*, 247 B.R. at 243; *Allard v. Weitzman*, 991 F.2d 1236, 1241 (6th Cir. 1993); *In re Lowenbraun*, 453 F.3d 314, 321 (6th Cir. 2006). Indeed, it appears that Mello has also filed an adversary proceeding against the trustee concerning the 7.5% contingency fee payment. (*See Mello v. James G. Henderson, Liquidation Trustee*, No. 10-00134-TBB (Bankr. N.D. Ala. filed Oct. 22, 2010).)

8

(citing *Things Remembered, Inc. v. BGTV, Inc.*, 151 B.R. 827, 833 (Bankr. N.D. Ohio 1993) and 1 Collier on Bankruptcy ¶ 4.04[4][a] (rev. 15th ed. 2008)). With respect to the "interest of justice" consideration, the interests of the bankruptcy estate, as opposed to the other litigants' interests, are paramount in the context of a § 1412 transfer. *RFF Family P'ship, LP v. Wasserman*, No. 1:07-cv-1617, 2010 WL 420014, at *4 (N.D. Ohio Jan. 29, 2010) (citing *In re Drytech, Inc.*, No. 05-07541, 2008 WL 4525331, at *4 (Bankr. M.D. Tenn. Jan. 24, 2008)). There is a strong presumption that the proper venue for a case related to a bankruptcy proceeding is the district in which the bankruptcy proceeding is pending. *Id.* (citing *Creekridge Capital, LLC v. La. Hosp. Ctr., LLC*, 410 B.R. 623, 629 (D. Minn. 2009) and *GEX Ky., Inc.. v. Wolf Creek Collieries Co.*, 85 B.R. 431, 435 (Bankr. N.D. Ohio 1987)).

The Bankruptcy Court plainly has extensive familiarity with the nature of the parties' fee dispute, with respect to which the Bankruptcy Court has held several hearings, considered multiple rounds of briefing from the parties, and issued several orders, including an order dismissing the substantially identical *Mello II* dispute with prejudice. Furthermore, the Bankruptcy Court will be in the best position to determine whether its prior orders have partial or complete preclusive effect on Mello's claims asserted in this case, which (a) overlap substantially with the *Mello II* allegations that the Bankruptcy Court previously considered, dismissed with prejudice, and warned Mello not to refile; (b) appear, as to compensatory damages, to have been satisfied/precluded by the Bankruptcy Court's May 1, 2012 Order awarding disbursement of Mello's 7.5% share of Pogue's recovery from final settlement of the *qui tam* action; and (c) appear, as to punitive damages, to be without merit, given that the Bankruptcy Court has apparently found that Hare Wynn's transfer of the entire *qui tam* action

9

proceeds to the liquidation trust account was proper in the first place. It also appears that several orders in the Bankruptcy Proceeding have been appealed to the District Court for the Northern District of Alabama, some of which the district court has ruled on, and at least one of which relates to the contingency fee dispute and remains pending. Plainly, the Bankruptcy Court and the District Court for the Northern District of Alabama are in the best position to determine the preclusive effect of their own orders, which may dispose of this case in whole or in part.

Effectively, Mello seeks review of the Bankruptcy Court's judgments in this court or by the Tennessee state courts. For example, Mello's Response to the defendants' Motion to Dismiss or Transfer contains an entire section in which Mello simply complains about the Bankruptcy Court's handling of the Bankruptcy Proceeding, including its decision to dismiss the *Mello II* adversary proceeding with prejudice and its warning to Mello not to refile his claims against Hare Wynn in a separate lawsuit – which is essentially what Mello has done by filing the instant action. (*See* Docket No. 11, pp. 6-8.) To the extent Mello disagreed with the Bankruptcy Court's decisions, he was entitled to appeal those decisions to the District Court for the Northern District of Alabama. Moreover, to the extent Mello has flouted the Bankruptcy Court's order(s) and/or the Bankruptcy Court's express instructions made in open court, the Northern District of Alabama and its associated Bankruptcy Court constitute the appropriate venue for determining the potential consequences of Mello's decision to file this lawsuit.

In sum, in the interests of justice, the court finds that the Northern District of Alabama, which is the venue for the Bankruptcy Proceeding, is the appropriate venue for further disposition of this case.

## CONCLUSION

For the reasons stated herein, the Motion to Remand will be denied, the defendants' motion will be granted as to transfer, the defendants' alternative request to dismiss Mello's claims will be denied without prejudice, and this case will be transferred to the United States District Court for the Northern District of Alabama.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge